1   James Vlahakis (Illinois St. Bar No. 6230459)
2   SULAIMAN LAW GROUP, LTD.
    2500 South Highland Avenue, Suite 200
3   Lombard, Illinois 60148
    Telephone: (630) 581-5456
4   Email: jvlahakis@sulaimanlaw.com
    *Attorney for Plaintiff (pro hac vice)*
5

6

7               **UNITED STATES DISTRICT COURT**
                **FOR THE DISTRICT OF ARIZONA**

8   | Nick Fisher, individually and on behalf of | Case No. |
9   | a nationwide class of similarly situated individuals, | |

**COMPLAINT FOR DAMAGES**

10         Plaintiff,

11  v.                                    1.  **VIOLATION OF THE  TELEPHONE**
                                              **CONSUMER PROTECTION ACT, 47**
12                                            **U.S.C. § 227 ET SEQ.;**

                                          **DEMAND FOR JURY TRIAL**
13
    Porch.com, Inc.; German Roofing, LLC;
14  John Doe Telemarketing Defendants; and
    John Doe Home Improvement Defendants,
15
            Defendants.
16

17                        **CLASS ACTION COMPLAINT**

18          NICK  FISHER,  by and through his attorney, James C. Vlahakis, brings  this  Class

19  Action Complaint for damages, declaratory relief and injunctive relief pursuant to Federal Rule of

20  Civil Procedure 23:

21

22  **I.    Parties and Subject Matter Jurisdiction**

23      1.      Plaintiff is a citizen and resident of the State of Arizona, and a natural "person" as

24  defined by 47 U.S.C. §153(39).

25      2.      Plaintiff's cellular telephone number for all times relevant to the issues described in

26  this Complaint was and is (602) 750-6084 (hereafter "Plaintiff's cellular number").
27

28                                          1

3.      Defendant Porch.com, Inc. ("Defendant" or "Porch") is incorporated under the laws of the state of Delaware, maintains its principal place of business in Seattle Washington, and at all times mentioned in this civil action was a corporation and a "person" as defined by 47 U.S.C. §153(39).

4.      Porch is headquartered in Seattle, Washington, and its mailing address is **2200 1ST AVE S, SEATTLE, WA, 98134, and its registered agent is NATIONAL REGISTERED AGENTS, INC., located at 711 Capitol Way S Ste 204, Olympia, Washington 98501.**

5.      Defendant German Roofing, LLC ("German Roofing"), is a Mesa Arizona based roofing company and was and is a "person" as defined by 47 U.S.C. §153(39).

6.      The JOHN DOE Telemarketing Defendants are currently unknown telemarketers or lead source generators who are contractually affiliated with Porch.

7.      The JOHN DOE Telemarketing Defendants are corporate entities of some type, and therefore they are "person[s]" as defined by 47 U.S.C. §153(39).

8.      On information and belief, one or more of JOHN DOE Telemarketing Defendants are Arizona and California based corporations.

9.      The JOHN DOE Home Improvement Defendants are corporate entities of some type, and therefore they are "person[s]" as defined by 47 U.S.C. §153(39).

10.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§1331 and 1337 because this is a civil action for damages arising pursuant to the TCPA and this case arises out of violation of federal law. *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740 (2012).

11.     Alternatively, this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2) because the amount in controversy exceeds $5,000,000, in the aggregate (exclusive of interest and costs).[1]

12.     The amount in controversy easily exceeds $5,000,000, because the TCPA provides for a minimum of $500 per violation, and Plaintiff asserts a national class, which will result in at least one Class member from a different state.

**II.     Summary of Porch's Business Model**

13.     Porch provides two types of services to homeowners in the United States. First, Porch promotes itself as being able to directly provide home repair and home improvement services to persons within the United States.  Porch refers to its second type of service as involving "Porch Services pros" providing "Porch Services." https://porch.com/how-it-works/porch-services (last accessed on 8/27/19).

14.      Second, Porch promotes itself as being able to directly provide persons with referrals and quotes from "independent pros" for home repair and home improvement services within in the United States.  Porch refers to its second type of service as involving its so-called "Porch Pro Network."

15.     Porch states that its "Porch Pro Network" allows homeowners to "[f]ind nearly any type of home professional for home repair, maintenance, and improvement projects." https://porch.com/how-it-works/porch-pro-network (last accessed on 8/27/19).

16.     Porch's website compares the differences between "Porch Services" and "Porch Professional Network" as follows:

---

[1] 10,000 illegal telemarketing calls or prerecorded and/or artificial voice messages would result in $5,000,000 in damages.

1

2

3

4

5

6

7    https://porch.com/how-it-works/porch-services (last accessed on 8/27/19).

8         17.    Porch describes how its "Porch Pro Network" works and how its "Porch Pro

9    Network" is "made up":

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    See, https://porch.com/how-it-works/porch-pro-network (last accessed on 8/27/19).

25         18.    As discussed below, Porch does not directly inform prospective homeowners that

26    the use of Porch's "Pro Services" and/or "Pro Network" will result in unwanted and unending

27

28

4

ATDS based telephone calls and text messages from Porch as well as currently unknown JOHN DOE Telemarketing Defendants and JOHN DOE Home Improvement Defendants.

19.    The JOHN DOE Telemarketing Defendants are currently unknown businesses that are contractually affiliated with Porch that locate and provide leads to Porch for the purpose of promoting home improvement services to residents of the States of Arizona and California and the remaining 48 states.

20.    One or more of the JOHN DOE Telemarketing Defendants are Arizona and California based corporations that promote or provide home improvement services to residents of the States of Arizona and California.

21.    The JOHN DOE Home Improvement Defendants are currently unknown businesses that are contractually affiliated with Porch for the purpose of promoting and providing home improvement services and projects to persons living in Arizona, California and the remaining 48 states.

22.    One or more of the JOHN DOE Home Improvement Defendants are Arizona and California based corporations that promote or provide home improvement services to residents of the States of Arizona and California.

23.    As discussed below, Porch called and/ texted homeowners like Plaintiff with an ATDS as defined by the TCPA in an attempt to promote Porch's "Porch Services" and "Porch Professional Network".

24.    As discussed below, on information and belief Porch currently calls and/or texts homeowners with an ATDS as defined by the TCPA in an attempt to promote Porch's " "Porch Services" and "Porch Professional Network".

25.     As discussed below, on information and belief, the JOHN DOE Telemarketing Defendants called and/ texted homeowners like Plaintiff with an ATDS as defined by the TCPA in an attempt to promote Porch's "Porch Services" and "Porch Professional Network".

26.     On information and belief, the JOHN DOE Telemarketing Defendants call and/or text homeowners with an ATDS as defined by the TCPA in an attempt to promote Porch's "Porch Services" and "Porch Professional Network".

27.     As discussed below, on information and belief, the JOHN DOE Home Improvement Defendants called and/ texted homeowners like Plaintiff with an ATDS as defined by the TCPA in an attempt to promote Porch's "Porch Services" and "Porch Professional Network".

28.     On information and belief, the JOHN DOE Home Improvement Defendants call and/or text homeowners with an ATDS as defined by the TCPA in an attempt to promote Porch's "Porch Services" and "Porch Professional Network".

29.     During the time period of ___, 2017, through ____ (the "relevant time period"), Porch profited from calls and text messages made by the JOHN DOE Telemarketing Defendants where the calls and texts promoted Porch's "Porch Services" and "Porch Professional Network".

30.     During the relevant time period, Porch profited from calls and text messages made by the JOHN DOE Home Improvement Defendants where the calls and texts promoted Porch's "Porch Services" and "Porch Professional Network".

31.     The profits that Porch received derived from homeowners signing up with Porch in response to the calls and texts from the JOHN DOE Telemarketing Defendants and JOHN DOE Home Improvement Defendants where the calls and texts promoted Porch's "Porch Services" and "Porch Professional Network."

32.     The term "Home Improvement Projects" is intended to incorporate calls and texts messages made by Porch and the JOHN DOE Telemarketing Defendants and JOHN DOE Home

Improvement Defendants to the cellular telephone numbers of persons (at times "prospective homeowners") where the calls or texts promoted Porch's "Porch Services" or "Porch Professional Network" to prospective homeowners.

33.    The prospective homeowners are natural persons as "person" as defined by 47 U.S.C. §153(39).

34.    Poarch is vicariously liable TCPA violations committed by the JOHN DOE Telemarketing Defendants and the JOHN DOE Home Improvement Defendants (at times the "JOHN DOE Defendants").

**III.    Personal Jurisdiction and Venue**

35.    Personal jurisdiction and venue is also proper in this District because Porch has placed telephone calls to residents of this District who were assigned (602) based area code numbers, an area code that Porch knew was associated with cellular telephone number assigned to the Phoenix, Arizona.

36.    Personal jurisdiction and venue is proper in this District pursuant to 18 U.S.C. § 1391(b) because Porch has engaged in  significant and continuous conduct within this District by and through internet advertising, telemarketing calls promoting potential Home Improvement Projects to persons, as well as completed Home Improvement Projects.

37.    Porch.com received monies from Arizona residents completed Home Improvement Projects that we promoted by Porch as well as the JOHN DOE Telemarketing Defendants and the JOHN DOE Home Improvement Defendants.

38.    Porch has reasonably availed itself to this Court's jurisdiction as evidenced by Porch's website that promotes "Browse Professionals by State", and specifically, professionals within the State of Arizona.  The below image captures a portion of Porch's website which promotes to Arizona residents the ability to "Browse Professionals by State":

1
2
3
4
5
6
7



8    39.    The below image captures a portion of Porch's website which promotes Mesa

9   Arizona based roofers, one of which is German Roofing:

10
11



20    40.    German Roofing is listed and linked to Porch's website and which provides the

21   following partial profile:

22
23
24
25
26
27
28

8



See, https://porch.com/mesa-az/roofers/german-roofing-164635515/pp

41.    If a person were to click on "REQUEST QUOTES" on the above image, he/she/they would be provided with the following disclaimer language:



42.    The disclaimer language states as follows:

By clicking the button below, you consent to our Terms of Use and for Porch and service providers to call or text you using automated technology at the phone numbers you provide, regarding your project and other home-related services that may be of interest to you. Consent is not a condition of any purchase..
Learn more.

43.    The disclaimer language does not contain a hyper-link to the Porch's so-called "Terms of Use."

44.     Rather, persons submitting a form are required to click on the words "Learn more."

45.     To the best of Plaintiff's recollection, Plaintiff did not submit a quote for roofing services on Porch's website.

46.     And as demonstrated below, Porch's affiliations and contractual relationships with the JOHN DOE Telemarketing Defendants led Porch to call Plaintiff's cellular telephone number without his express consent for the purpose of promoting Porch's Home Improvement Projects.

47.     As further demonstrated below, Porch's business model linked up residents of the State of Arizona Porch's affiliated JOHN DOE Home Improvement Defendants because of Porch's affiliations and contractual relationships with the JOHN DOE Telemarketing Defendants.

48.     Porch's affiliations and contractual relationships with the JOHN DOE Telemarketing Defendants led to ATDS dialed calls and telemarketing text messages by Porch and on behalf of Porch.

49.     Porch's affiliations and contractual relationships with the JOHN DOE Telemarketing Defendants led to completed Home Improvement Projects that financially benefited Porch as well as the JOHN DOE Telemarketing Defendants and JOHN DOE Home Improvement Defendants doing business in this District.

50.     Personal jurisdiction and venue is proper in this District relative to German Roofing because it is an Arizona corporation that promotes and provides roofing services to residents of the State of Arizona, and German Roofing called and transmitted text messages to Plaintiff's cellular telephone in violation of the TCPA.

51.     Porch's affiliation and contractual relationship with German Roofing led to completed Home Improvement Projects within this District that financially benefited Porch and German Roofing.

52.     Finally, venue and personal jurisdiction exist in this District  pursuant to U.S.C. §§ 1391(b)-(c) and 1441(a) because a defendant, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time a civil action is commenced

## IV.     Summary of the TCPA

53.     Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful for a person to call another person's cellular telephone using an "automatic telephone dialing system" or "artificial or prerecorded voice" without the express consent of the person being called.

54.     Section 227(a)(1) of the TCPA defines the term "automatic telephone dialing system" (hereafter "ATDS") to mean "equipment which has the capacity - (A) to store or produce telephone number to be called, using a random or sequential number generator' and (B) to dial such numbers."

55.     In enacting the TCPA, Congress stated that "[t]he evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…."  Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §§ 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991).

56.     Congress also wrote, "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. *Id.* at § 11.

57.     The Supreme Court has stated that "[v]oluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012). The Supreme Court has also recognized that in enacting the TCPA, Congress made specific findings that "unrestricted telemarketing can be an intrusive invasion of privacy" and are a "nuisance." *Mims,* 132 S. Ct. at 745.

58.     In discussing whether a statutory violation affords a person Article III standing to assert a cause of action in federal court, the Supreme Court recognized that Congress has the power to enact laws to elevate certain harms "to the status of legally cognizable injuries." *Spokeo, Inc., v. Robbins*, 136 S. Ct. 1540, 1549 (2016).   In *Spokeo*, the Court stated that "both history and the judgment of Congress play important roles" and "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements…Congress may 'elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *Id.*

59.     As recognized in ***Satterfield v. Simon & Schuster, Inc.***, 569 F.3d 946, 953 (9th Cir. 2009), § 227(b)(1)(A)(iii) of the TCPA prohibits the transmission of text messages to cellular telephones without the consent of the person receiving the messages.

60.     Vicarious liability and agency principles apply under the TCPA to hold a party responsible and liable for TCPA violations committed by a third-party vendor. For example, in *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), the plaintiff alleged that the defendant, Campbell-Ewald Company ("Campbell"), had instructed or allowed a third-party vendor to send unsolicited text messages on behalf of the United States Navy –- with whom Campbell-Ewald had a marketing contract. *Gomez*, 768 F.3d at 873. Campbell argued that it could not be held liable for the alleged TCPA violations since it had outsourced the dialing and did not actually make any calls on behalf of its client. *Id.* at 877. The Ninth Circuit rejected this argument and ruled that the TCPA allowed for vicarious liability. *Id.* at 878-79 (a "defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller.").

61.    As discussed below, even if Porch did not place the calls or text messages described below, Porch can be held liable under the TCPA for the conduct of the other Defendants in this civil action.

**V.    Summary of Allegation and Claims**

62.    Porch called Plaintiff's cellular telephone number without his express permission for the purpose of delivering telemarketing messages promoting Porch's Home Improvement Projects.

63.    As described below, Porch violated the TCPA by continuing to call Plaintiff's cellular telephone number with an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), without Plaintiff's express consent.

64.    As utilized below, Porch called Plaintiff with an ATDS for the purpose of subjecting Plaintiff to dozens of autodialed telemarketing phone calls and text messages promoting Porch's Home Improvement Projects as this term was previously defined.

65.    At other times, Porch also violated the TCPA by urging, encouraging or otherwise contractually inducing the JOHN DOE Telemarketing Defendants and JOHN DOE Home Improvement Defendants to call Plaintiff's cellular telephone number with an ATDS to promote Porch's Home Improvement Projects.

66.    The JOHN DOE Telemarketing Defendants and JOHN DOE Home Improvement Defendants called Plaintiff's cellular telephone number without Plaintiff's consent.

67.    As detailed in certain calls identified below, the JOHN DOE Telemarketing Defendants and JOHN DOE Home Improvement Defendants violated the TCPA by using an ATDS to place calls promoting Porch's Home Improvement Projects to Plaintiff's cellular telephone, and the cellular telephones of similarly situated persons, to assist Porch in the performance of its business model.

68.    As detailed in certain calls identified below, the JOHN DOE Telemarketing Defendants and JOHN DOE Home Improvement Defendants violated the TCPA by using an ATDS to transmit unsolicited text messages and phone calls to Plaintiff's cellular telephone, and the cellular telephones of similarly situated persons, to assist Porch in the performance of promoting Porch's Home Improvement Projects.

69.    In conjunction with, and/or the knowledge of Porch, German Roofing, called Plaintiff's cellular telephone with an ATDS and used an ATDS to transmit unsolicited text messages to Plaintiff's cellular telephone number for the purpose of promoting Porch's Home Improvement Projects.

70.    In doing so, German Roofing violated § 227(b)(1)(A)(iii) of the TCPA and both Porch is vicariously liable for German Roofing's TCPA violations.

71.    Porch is vicariously liable for any TCPA violations committed by the JOHN DOE Defendants and German Roofing because Porch was responsible to monitoring TCPA compliance and Porch knew of other lawsuits involving its telemarketing of its Home Improvement Projects by the JOHN DOE Telemarketing Defendants and/or JOHN DOE Home Improvement Defendants.

72.    As discussed below, Plaintiff, on more than one occasion, demanded that Porch stop calling him, but Porch's calls continued.

73.    During certain calls, Plaintiff specifically demanded that Porch stop calling his cellular phone with an "autodialer" or similar words.

74.    At other times, Plaintiff specifically demanded that Porch only had permission to "manually dial" his cellular phone.

75.    Despite these instructions, Porch continued to call Plaintiff with an ATDS to benefit Porch through increased profits.

76.     As discussed below, Plaintiff, on more than one occasion, demanded that one or more of the JOHN DOE Telemarketing Defendants and JOHN DOE Home Improvement Defendants stop calling him with an ATDS, but the calls continued.

77.     During certain calls, Plaintiff specifically demanded that the JOHN DOE Telemarketing Defendants and JOHN DOE Home Improvement Defendants stop calling his cellular phone with an "autodialer" or similar words.

78.     At other times, Plaintiff specifically demanded that the JOHN DOE Telemarketing Defendants and JOHN DOE Home Improvement Defendants only had permission to "manually dial" his cellular phone.

79.     Despite these instructions, the JOHN DOE Telemarketing Defendants and JOHN DOE Home Improvement Defendants continued to call Plaintiff with an ATDS to benefit Porch through increased profits.

80.     If Porch contracted with or otherwise encouraged one or more of the JOHN DOE Defendants to call Plaintiff's cellular phone number with an ATDS for the purpose of inducing Plaintiff to purchase Porch's Porch's Home Improvement Projects, these types of calls would violate Section 227(b)(1)(A)(iii) of the TCPA and render Porch liable for the calls under the theory of various liability.

81.     Plaintiff never expressly consented (in writing or otherwise) to allow Defendants to call his cellular number with an "automatic telephone dialing system" or "artificial or prerecorded voice."

82.     For example, German Roofing is listed and linked to Porch's website and which provides the following partial profile:



See, https://porch.com/mesa-az/roofers/german-roofing-164635515/pp

83.     If a person were to click on "REQUEST QUOTES" on the above image, he/she/they would be provided with the following disclaimer language:

84.     The disclaimer language states as follows:

> By clicking the button below, you consent to our Terms of Use and for Porch and service providers to call or text you using automated technology at the phone numbers you provide, regarding your project and other home-related services that may be of interest to you. Consent is not a condition of any purchase..
> Learn more.

85.     The disclaimer language does not contain a hyper-link to the Porch's so-called "Terms of Use."

16

86.    Rather, persons submitting a form are required to click on the words "Learn more."

87.    To the best of Plaintiff's recollection, Plaintiff did not submit a quote for roofing services on Porch's website.

88.    Porch and/or one or more of the JOHN DOE Defendants violated Section 227(b)(1)(A)(iii) of TCPA by calling Plaintiff's cellular number for telemarketing purposes without first having obtained Plaintiff's prior express consent to call him with an "automatic telephone dialing system" or "artificial or prerecorded voice.

89.    As a result of these violations, Plaintiff and a nationwide class of similarly situated persons are entitled to at least $500 per violation and up to $1,500 per violation.

## VI.    Summary of the TCPA and Certain Statutory Definitions

90.    The TCPA makes it unlawful for a person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii).

91.    47 CFR 64.1200(a)(1)(iii) provides that "[n]o person or entity may: . . . initiate any telephone call (other than a call . . . made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

92.    For calls that include an advertisement, or constitute telemarketing, 47 CFR 64.1200(a)(2) provides that "[n]o person or entity may: . . . [i]nitiate, or cause to be initiated, any

17

telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party[.]"

93.     In enacting the TCPA, Congress wrote that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, *regardless of the type of call*…." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §§ 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991) (emphasis supplied).

94.     The TCPA defines the term "automatic telephone dialing system" to mean "equipment which has the capacity - (A) to store or produce telephone number to be called, using a random or sequential number generator' and (B) to dial such numbers." *See* 47 U.S.C. § 227(a)(1).

95.     The TCPA defines the term "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *See* 47 U.S.C. § 227(a)(5).

96.     47 CFR § 64.1200(d) states that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

97.     47 CFR § 64.1200(d) states "[t]he procedures instituted must meet the following minimum standards:

> **(1)** *Written policy.* Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

18

**(2)** *Training of personnel engaged in telemarketing.* Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

**(3)** *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .

**(4)** *Identification of sellers and telemarketers.* A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

**(5)** *Affiliated persons or entities.* In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

**(6)** *Maintenance of do-not-call lists.* A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

98.     47 CFR § 64.1200(e) states that "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991'."

99.     Pursuant to 47 CFR § 64.1200(f)(8), the term "prior express written consent" means:

an agreement, in writing, bearing the signature of the person called that

19

clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

100.    Section 64.1200(f)(8) states that a written agreement shall:

(i) . . . include a clear and conspicuous disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

101.    47 CFR § 64.1200(f)(9) states that "[t]he term *seller* means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

102.    47 CFR § 64.1200(f)(11) states that "[t]he term *telemarketer* means the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

103.    47 CFR § 64.1200(f)(12) states that "[t]he term *telemarketing* means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person".

104.    47 CFR § 64.1200(f)(15) states that "[t]he term *unsolicited advertisement* means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."

105.    As described below, the calls and text messages that Plaintiff received from Porch were unsolicited advertisement as defined by § 227(a)(5) of the TCPA.

106.    Porch acted as a "seller" as this term is defined by 47 CFR § 64.1200(f)(9) by calling or causing Plaintiff's cellular telephone to be called with an ATDS for the purpose of receiving telemarketing messages that promoted Porch's Home Improvement Projects.

107.    Alternatively, in conjunction with and in agreement with one or more of the JOHN DOE Defendants, Porch acted as a "seller" as this term is defined by 47 CFR § 64.1200(f)(9) by authorizing one or more of the JOHN DOE Defendants to call Plaintiff's cellular telephone with an ATDS for the purpose of promoting Porch's Home Improvement Projects.

108.    Porch acted as a "telemarketer" as this term is defined by 47 CFR § 64.1200(f)(11) by calling or causing Plaintiff's cellular telephone to be called with an ATDS for the purpose of promoting Porch's Home Improvement Projects.

109.    Alternatively, in conjunction with and in agreement with one or more of the JOHN DOE Defendants, Porch, acted as a "telemarketer" as this term is defined by 47 CFR § 64.1200(f)(11) by authorizing one or more of the JOHN DOE Defendants to call Plaintiff's cellular telephone with an ATDS for the purpose of promoting Porch's Home Improvement Projects.

110.    Porch engaged in "telemarketing" as this term is defined by 47 CFR § 64.1200(f)(12) by calling or causing Plaintiff's cellular telephone to be called with an ATDS for the purpose of encouraging the purchase of Porch's Home Improvement Projects.

111.    Alternatively, in conjunction with and in agreement with one or more of the JOHN DOE Defendants, Porch engaged in "telemarketing" as this term is defined by 47 CFR § 64.1200(f)(12) by authorizing one or more of the JOHN DOE Defendants to call Plaintiff's cellular telephone with an ATDS for the purpose of encouraging the purchase of Porch's Home Improvement Projects.

112.    Porch engaged in "unsolicited advertisement[s]" as this term is defined by 47 CFR § 64.1200(f)(15) by calling or causing Plaintiff's cellular telephone to be called with an ATDS for

the purpose of promoting Porch's Home Improvement Projects.

113.    Alternatively, Porch, in conjunction with one or more of the JOHN DOE Defendants, engaged in "unsolicited advertisement[s]" as this term is defined by 47 CFR § 64.1200(f)(15) by authorizing one or more of the JOHN DOE Defendants to call Plaintiff's cellular telephone with an ATDS for the purpose of promoting Porch's Home Improvement Projects.

## VII.    Summary of Telephone Calls and Text Messages

114.    As summarized below, Plaintiff has received dozens of autodialed and prerecorded telemarketing phone calls and/or text messages that were placed or made by Porch without Plaintiff express written permission and/or contrary to his verbal instructions.

115.    For example, on October 29, 2017, at 1:27 p.m. Mountain Time[2], Plaintiff received a text message from a (480) area code that said:

> Porch: German Roofing LLC will be responding to you soon from this
> number. You may want to add them to your contact list for future
> communication. Full Profile: https://porch.com/s/1F2n1OFn94

116.    This message was sent to Plaintiff's cellular telephone number by Porch or German Roofing without Plaintiff's express consent.

117.    Less than two seconds later, On October 29th, 2017, at 1:27 p.m. Plaintiff received a second text message from the same (480) number that said:

> Hi, Thanks for submitting your project request! We would love to speak
> with you about the work you need done. When is a good time for us to call
> to discuss the details? Best, German Roofing LLC

118.    Plaintiff does not believe that he every submitted a project request as claimed in the two above quoted messages.

119.    As an example of an unlawful ATDS dialed call, on October 30th, 2017 at 2:51 p.m. Plaintiff received call from area code (480).

---

[2] All calls listed in this Complaint took place on Mountain Standard Time.

120.    Upon answering this call, there was a three to four second pause before a live person answered.

121.    The person that Plaintiff spoke with indicated that he was calling from "German Roofing" at which time Plaintiff recalls that he terminated by hanging up.

122.    Less than one minute later Plaintiff received another call from "German Roofing" from the same (480) number.

123.    Upon answering this call there was a four to five second pause before a live person answered.

124.    During this call, the person told Plaintiff "We got information from Porch that you need an estimate for your roof."

125.    In response, Plaintiff said that he did not "have time to talk" and instructed the other person as follows: "please don't call me back" and the person replied "Okay."

126.    During other calls that Plaintiff received, he would answer the calls by saying "hello?, hello?" and after a few seconds of dead air, a person would answer and indicate that he or she was calling on behalf of Porch or that he or she was otherwise affiliated with Porch.com.

127.    Plaintiff would generally respond by telling the person on the phone that he was not interested and to stop calling him.

128.    In response to other calls, Plaintiff would respond by cutting the sales pitch short and indicating that he would call back if he was interested.

129.    On information and belief, German Roofing and/or one or more of the JOHN DOE Defendants placed or made these calls on behalf of Porch and with Porch's direct or indirect knowledge.

130.    One or more of the above calls placed to Plaintiff's cellular telephone were made with an ATDS, as defined by 47 U.S.C. § 227(a)(1).

23

131.    Alternatively, if an ATDS was not used, then a majority of the above calls placed to Plaintiff's cellular telephone were made with a predictive dialer as defined by the FCC by or with the approval of Defendant.

**VIII.    Defendants Violated 47 CFR § 64.1200(d) By Failing to Comply With "Do Not Call" or "Stop Calling" Requests**

132.    When a person no longer wants to receive Porch's Home Improvement Projects and a person says "stop calling me", Defendants not have a system in place to stop themselves from continuing to make ATDS based calls promoting Porch's Home Improvement Projects.

133.    Under Porch's business model, if a person answered one of Porch's Home Improvement Projects and said "stop calling me", Porch's ATDS based Home Improvement Projects would continue unabated.

134.    When Plaintiff answered one of Porch's Home Improvement Projects and said, "stop calling me", Porch's ATDS based Home Improvement Projects would continue unabated.

135.    Under Porch's business model, Plaintiff was unable to prevent additional ATDS based Home Improvement Projects from coming from *other* JOHN DOE Defendants.

136.    As detailed below, when Plaintiff answered one of the Home Improvement Projects from Porch and told the person on the other end of the call to "stop calling me", Defendants did not have a system in place to stop *additional* Home Improvement Projects placed by German Roofing and the JOHN DOE Defendants.

137.    As detailed below, when Plaintiff answered a Home Improvement Projects call from German Roofing, and Plaintiff told the person on the other end of the call to "stop calling me", Defendants did not have a system in place to stop continued Home Improvement Projects from German Roofing and the *other* JOHN DOE Defendants.

138.    As detailed below, when Plaintiff answered a Home Improvement Projects call from one of the JOHN DOE Defendants, and Plaintiff told the person on the other end of the call to "stop

24

calling me", Defendants did not have a system in place to stop continued Home Improvement Projects from the *other* JOHN DOE Defendants.

139.    As detailed below, when Plaintiff answered a Home Improvement Projects call from one of the JOHN DOE Defendants, and Plaintiff told the person on the other end of the call to "stop calling me", the JOHN DOE Defendants placing the call did not have a system in place to stop continued Home Improvement Projects.

### A. Violations of 47 CFR § 64.1200(d)(2)

140.    47 CFR § 64.1200(d)(2) states that "[p]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."

141.    Porch violated 47 CFR § 64.1200(d)(2) when Porch called Plaintiff's cellular telephone number for the purpose of promoting Home Improvement Projects, because Porch did not train the personnel who spoke with Plaintiff to be informed and trained in the existence and use of the do-not-call list.

142.    The JOHN DOE Defendants violated 47 CFR § 64.1200(d)(2) when they called Plaintiff's cellular telephone number for the purpose of promoting Home Improvement Projects, because the JOHN DOE Defendants did not train the personnel who spoke with Plaintiff to be informed and trained in the existence and use of the do-not-call list.

### B. Violations of 47 CFR § 64.1200(d)(3)

143.    47 CFR § 64.1200(d)(3), in combination with 47 CFR § 64.1200(e) states that "[p]ersons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential [or cellular] subscriber's do-not-call request within a reasonable time from the date such request is made."

144.    Porch violated 47 CFR § 64.1200(d)(3) when Porch called Plaintiff's cellular telephone number for the purpose of promoting Porch's Home Improvement Projects, because

Porch and its employees do not record the telephone number requesting a do-not-call request on a do-not-call list at the time a do-not-call request is made.

145.    The JOHN DOE Defendants violated 47 CFR § 64.1200(d)(3) when they called Plaintiff's cellular telephone number for the purpose of promoting Porch's Home Improvement Projects, because the JOHN DOE Defendants do not honor do-not-call requests within a reasonable time from the date such request is made.

C.    **Violations of 47 CFR § 64.1200(d)(4)**

146.    47 CFR § 64.1200(d)(4) states that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number . . . at which the person or entity may be contacted."

147.    Porch violated 47 CFR § 64.1200(d)(4) when Porch called Plaintiff's cellular telephone number for the purpose of promoting Porch's Home Improvement Projects, because the persons that Plaintiff spoke with failed to provide Plaintiff with the name of the individual caller, the name of the entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

148.    The JOHN DOE Defendants violated 47 CFR § 64.1200(d)(4) when they called Plaintiff's cellular telephone number for the purpose of promoting Porch's Home Improvement Projects, because the persons that Plaintiff spoke with failed to provide Plaintiff with the name of the individual caller, the name of the entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

D.    **Violations of 47 CFR § 64.1200(d)(5)**

149.    47 CFR § 64.1200(d)(5) states that a "subscriber's do-not-call request shall apply to the particular business entity making the call [an shall also] apply to affiliated entities [where]

26

the consumer reasonably would expect [affiliated entities] to be included given the identification of the caller and the product being advertised."

150.    Porch violated 47 CFR § 64.1200(d)(5) because when Plaintiff answered a call placed by Porch and told the person on the other end of the call to stop calling him, Plaintiff reasonably expected that his request would apply to stop all future telephone calls and text messages promoting Porch's Home Improvement Projects by any and all JOHN DOE Defendants.

151.    One or more of the JOHN DOE Defendants violated 47 CFR § 64.1200(d)(5) because when Plaintiff answered a call placed by one or more of the JOHN DOE DEFENDANTS and told the persons on the other end of the call to stop calling him, Plaintiff reasonably expected that his request would apply to stop all future Home Improvement Projects by Porch and/or any and all JOHN DOE Defendants.

**E.    47 CFR § 64.1200(d)(6)**

152.    47 CFR § 64.1200(d)(6) states that "[a] person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

153.    Porch violated 47 CFR § 64.1200(d)(6) when Porch called Plaintiff's cellular telephone number for the purpose of promoting Porch's Home Improvement Projects, because after Plaintiff told Porch to stop calling him, Porch appears to have failed to maintain a record of Plaintiff's request not to receive further telemarketing calls.

154.    Further, Porch violated 47 CFR § 64.1200(d)(6) when Porch continued to call Plaintiff's cellular telephone number for the purpose of promoting Porch's Home Improvement Projects after Plaintiff told Porch to stop calling him.

155.    One or more of the JOHN DOE Defendants violated 47 CFR § 64.1200(d)(6) when it/they called Plaintiff's cellular telephone number for the purpose of promoting Porch's Home Improvement Projects, because after Plaintiff told it/them to stop calling him, one or more of the JOHN DOE Defendants appears to have failed to maintain a record of Plaintiff's request not to receive further telemarketing calls.

156.    Further, one or more of the JOHN DOE Defendants violated 47 CFR § 64.1200(d)(6) when it/they continued to call Plaintiff's cellular telephone number after Plaintiff told it/them to stop calling him.

157.    The JOHN DOE Defendants violated 47 CFR § 64.1200(d)(6) if and when the JOHN DOE DEFENDANTS called Plaintiff's cellular telephone number for the purpose of promoting Porch's Home Improvement Projects, because Plaintiff's do-not-call request was not honored after his request was made.

### IX.    Porch is Vicariously Liable For the Calls and Messages at Issue

158.    If Porch claims that it did not place or make any of the calls or messages at issue, it can still be vicariously liable for the conduct of the John Doe Defendants.

159.    On May 9, 2013, the FCC issued a Declaratory Ruling which stated that a creditor or seller of services can be liable under the TCPA for calls placed on its behalf:

> we clarify that while a seller does not generally "initiate" calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers.[3]

---

[3] The 2013 FCC Order is hosted at https://apps.fcc.gov/edocs_public/attachmatch/FCC-13-54A1_Rcd.pdf

28

160.    As a "seller" of "telemarketing" and "unsolicited advertisements", Porch can be vicariously liable for utilizing third-parties to place the calls at issue.

161.    "Absent a clear expression of Congressional intent to apply another standard, the Court must presume that Congress intended to apply the traditional standards of vicarious liability with which it is presumed to be familiar, including the alter ego and agency doctrines." *Thomas v. Taco Bell Corp.*, 879 F. Supp.2d 1079, 1084 (C.D. Cal. 2012).

162.    To the extent that Porch's agents violated the TCPA, their conduct can be imputed to Porch because when the JOHN DOE Defendant placed or initiated the calls in question, they did so on behalf of and for the benefit of Porch.

163.    Porch is vicariously liable for any violations of the TCPA caused by the JOHN DOE Defendants because, on information and belief, Porch authorized the JOHN DOE Defendants to place the telephone calls in question.

164.    Porch is vicariously liable for any violations of the TCPA caused by the JOHN DOE Defendants because, on information and belief, Porch instructed the JOHN DOE Defendants to place the telephone calls in question.

165.    Porch is vicariously liable for any violations of the TCPA caused by the JOHN DOE Defendants because, on information and belief, Porch received data from the JOHN DOE Defendants reflecting the telephone c in question.

166.    Porch is vicariously liable for any violations of the TCPA caused by the JOHN DOE Defendants because, on information and belief, Porch paid the JOHN DOE Defendants to make the telephone calls in question.

167.    Porch is vicariously liable for any violations of the TCPA caused by the JOHN DOE Defendants because, on information and belief, Porch intended to compensate the JOHN DOE

Defendants if a person receiving telephone calls promoting Porch's Home Improvement Projects resulted in a person signing up for the promoted service(s).

168.    Porch is vicariously liable for any violations of the TCPA caused by the JOHN DOE Defendants making the telephone calls in question by virtue of the fact that Porch knew of, monitored, and received periodic reports of the calls placed by the JOHN DOE Defendants.

169.    Porch is vicariously liable for any violations of the TCPA caused by the JOHN DOE Defendants making the telephone calls in question by virtue of the fact that Porch directed the JOHN DOE Defendants to place the calls in question.

170.    Porch is vicariously liable for any violations of the TCPA caused by the JOHN DOE Defendants who made calls promoting Porch's Home Improvement Projects by virtue of the fact that Porch ratified the calls in question by virtue of it entering into contracts and not terminating contracts with the JOHN DOE Defendants.

**X.    Causes Of Action**

### Count I – Against Porch
### For Violating §227(b)(1)(A)(iii) by Placing ATDS Based Calls Without Consent

171.    Plaintiff incorporates the above paragraphs as if fully set forth above.

172.    Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful to use an "automatic telephone dialing system" or an "artificial or prerecorded voice" to call a person's cellular telephone number "with[out] the prior express consent of the called party."

173.    In certain calls that Plaintiff answered, the person that Plaintiff eventually spoke with indicated that he/she was affiliated with or calling on behalf of Porch.

174.    Plaintiff never provided "prior express written consent" to Porch to allow Porch to call his cellular number with an "automatic telephone dialing system or an artificial or prerecorded voice."

175.    Plaintiff never signed any documents that contained any of the requirements set forth by 47 CFR § 64.1200(f)(8).

176.    Porch's calls to Plaintiff's cellular telephone number were telemarketing messages as defined by 47 CFR § 64.1200(f)(12) because Porch called and texted Plaintiff for the purpose of promoting Porch's Home Improvement Projects.

177.    Without Plaintiff's prior express invitation or permission, Porch called Plaintiff's cellular number with a "automatic telephone dialing system" or "autodialer" for the purpose delivering a "telephone solicitation" and an "unsolicited advertisement" as these terms defined by 47 CFR § 64.1200(f)(2), (14) and (15).

178.    Plaintiff never gave Porch permission to call him with an ATDS for the purpose of promoting Porch's Telemarking Service Calls.

179.    Porch called Plaintiff's cellular number with an ATDS because the calls placed by Porch resulted in dead air and long, unanswered pauses before a human would respond to Plaintiff's repeated "hello?" requests.

180.    Porch plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number, because Plaintiff did not provide Porch with his cellular telephone number prior to any calls being placed by Porch.

181.    It is also plausible that a form of an ATDS was used based upon the frequency and persistence of the above described calls.

182.    Alternatively, consistent with the law of the 9th Circuit Court of Appeals, Porch called his cellular telephone number with telephone equipment that can automatically dial phone numbers from a stored list (in a random or sequential manner), rather than dialing his number after randomly or sequentially generating a strings of ten (10) digit numbers and then automatically dialing the randomly or sequentially generated strings of ten (10) digit numbers.

31

183.    As a result of these violations, Plaintiff is entitled to $500 per violation as provided by 42 U.S.C. § 227(b)(3)(B).

184.    As detailed below in Section IX, the above TCPA violations are typical and common of the type of actions that Porch engaged in on a large scale by and through its practice of calling persons with and ATDS and without the consent of the persons called for the purpose of promoting Porch's Telemarking Service Calls.

185.    The below defined Class Members are also entitled to statutory damages as a result of the fact that they were harmed in the same ways as Plaintiff alleges above.

186.    The proposed class action claims in Count I are as follows:

> All persons in the State of Arizona who were called or texted by Porch.com with an ATDS four years prior to [the date of filing of this civil action] where Porch.com's calls and text messages were for the purpose of promoting Porch.com's home improvement services and Porch.com does not have records to demonstrate that the persons consented to being called by Porch.com in this manner.
> All persons in the State of Arizona who were called or texted by Porch.com with an ATDS four years prior to [the date of filing of this civil action] where Porch.com's calls and text messages were for the purpose of promoting Porch.com's home improvement services and Porch.com does not have records to demonstrate that the persons consented to being called by Porch.com in this manner.
> All persons in the United States who were called or texted by Porch.com with an ATDS four years prior to [the date of filing of this civil action] where Porch.com's calls and text messages were for the purpose of promoting Porch.com's home improvement services and Porch.com does not have records to demonstrate that the persons consented to being called by Porch.com in this manner.

WHEREFORE, Plaintiff is entitled to the following relief:

**a.**  Declare that the telephone calls placed by Porch to Plaintiff's cellular telephone number violated the TCPA;

**b.**  Award Plaintiff and Class Members statutory damages of $500 for each TCPA violation; and

**c.**  Enjoin Porch from violating the TCPA.

**Count II – Against Porch**
**For Willful Violations of Section 227(b)(1)(A)(iii) Relative to ATDS Based Calls**

187.    Plaintiff incorporates the above paragraphs as if fully set forth above.

188.    As set forth above, and in Count I specifically, Porch called Plaintiff's cellular telephone number with an ATDS and without his express consent.

189.    As alleged above, in certain calls that Plaintiff answered, the person that Plaintiff eventually spoke with indicated that he/she was affiliated with or calling on behalf of Porch.

190.    On more than one occasion, Plaintiff told the person he spoke with to stop calling him.

191.    Despite Plaintiff asking that the calls stop, calls continued to be made by Porch or on behalf of Porch as indicated by the person speaking with Plaintiff.

192.    As a result of these violations, Plaintiff is entitled to $1,500 per violation as provided by 42 U.S.C. § 227(b)(3)(C).

193.    As detailed below in Section IX, the above TCPA violations are typical and common of the type of actions that Porch engaged in on a large scale by and through its practice of calling persons with and ATDS and without the consent of the persons called for the purpose of promoting Porch's Telemarking Service Calls.

194.    The below defined Class Members are also entitled to statutory damages as a result of the fact that they were harmed in the same ways as Plaintiff alleges above.

195.    The proposed class action claims in Count II are as follows:

All persons in the State of Arizona who were called by Porch.com with an ATDS four years prior to [the date of filing of this civil action] where Porch.com's calls were for the purpose of promoting Porch.com's home improvement services and recipients of the calls answered and told Porch.com to stop calling and Porch.com continued to call the numbers in question.

All persons in the State of California who were called by Porch.com with an ATDS four years prior to [the date of filing of this civil action] where

33

Porch.com's calls were for the purpose of promoting Porch.com's home improvement services and recipients of the calls answered and told Porch.com to stop calling and Porch.com continued to call the numbers in question.

All persons in the United States who were called by Porch.com with an ATDS four years prior to [the date of filing of this civil action] where Porch.com's calls were for the purpose of promoting Porch.com's home improvement services and recipients of the calls answered and told Porch.com to stop calling and Porch.com continued to call the numbers in question.

WHEREFORE, Plaintiff is entitled to the following relief:

    **a.** Declare that the telephone calls placed by Porch to Plaintiff's cellular telephone number violated the TCPA;

    **b.** Award Plaintiff and Class Members statutory damages of $1,500 for each violation after they told one or more of the Defendants to stop calling them; and

    **c.** Enjoin Porch from violating the TCPA.

**Count III – Against German Roofing**
**For Violations of § 227(b)(1)(A)(iii) Relative to ATDS Calls and Text Messages**

196.    Plaintiff incorporates the above paragraphs as if fully set forth above.

197.    Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful to use an "automatic telephone dialing system" or an "artificial or prerecorded voice" to call a person's cellular telephone number "with[out] the prior express consent of the called party."

198.    Plaintiff never provided "prior express written consent" to allow or otherwise authorize German Roofing to text message or call his cellular number with an "automatic telephone dialing system or an artificial or prerecorded voice."

199.    Plaintiff never signed any documents that contained any of the requirements set forth by 47 CFR § 64.1200(f)(8).

200.    During certain calls mentioned above, the person answering the phone indicated that he/she was calling from or behalf of German Roofing.

201.    German Roofing's calls to Plaintiff's cellular telephone number were telemarketing messages as defined by 47 CFR § 64.1200(f)(12) because German Roofing called and texted Plaintiff for the purpose of promoting Porch's Home Improvement Projects.

202.    Without Plaintiff's prior express invitation or permission, German Roofing called and texted Plaintiff's cellular number with a "automatic telephone dialing system" or "autodialer" for the purpose delivering a "telephone solicitation" and an "unsolicited advertisement" as these terms defined by 47 CFR § 64.1200(f)(2), (14) and (15).

203.    Plaintiff never gave German Roofing permission to call him with an ATDS for the purpose of promoting Porch's Telemarking Service Calls.

204.    Plaintiff never gave German Roofing permission to call or text him with an ATDS for the purpose of promoting Porch's Home Improvement Projects.

205.    When German Roofing called Plaintiff's cellular number with an ATDS because the calls placed resulted in dead air and long, unanswered pauses before a human would respond to Plaintiff's repeated "hello?" requests.

206.    German Roofing plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number, because Plaintiff did not provide Porch or German Roofing with his cellular telephone number prior to being called and messaged by German Roofing.

207.    Alternatively, the German Roofing plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a list of stored numbers), because Plaintiff did not provide Porch or the German Roofing with his cellular telephone number prior to any text messages calls being placed by German Roofing.

208.    It is also plausible that an ATDS was used based upon the frequency and persistence of the above described calls.

209.     As detailed below in Section IX, the above TCPA violations are typical and common of the type of actions that German Roofing engaged in on a large scale by and through its practice of calling persons with and ATDS and without the consent of the persons called for the purpose of promoting Porch's Telemarking Service Calls.

210.     As a result of these violations, Plaintiff is entitled to at least $500 per violation and up to $1,500 per violation as provided by 42 U.S.C. § 227(b)(3)(B)-(C).

211.     The class action claims in Count III against German Roofing are defined as follows:

> All persons in the State of Arizona who were called or texted by German Roofing with an ATDS four years prior to [the date of filing of this civil action] where German Roofing's calls and text messages were for the purpose of promoting Porch.com's home improvement services and Porch.com and German Roofing do not have records to demonstrate that the persons consented to being called in this manner
>
> All persons in the State of California who were called or texted by German Roofing with an ATDS four years prior to [the date of filing of this civil action] where German Roofing's calls and text messages were for the purpose of promoting Porch.com's home improvement services and Porch.com and German Roofing do not have records to demonstrate that the persons consented to being called in this manner.
>
> All persons in the United States who were called or texted by German Roofing with an ATDS four years prior to [the date of filing of this civil action] where German Roofing's calls and text messages were for the purpose of promoting Porch.com's home improvement services and Porch.com and German Roofing do not have records to demonstrate that the persons consented to being called in this manner.

WHEREFORE, Plaintiff is entitled to the following relief:

**a.** Declare that the telephone calls and text messages placed by German Roofing to Plaintiff's cellular telephone number violated the TCPA;

**b.** Award Plaintiff and Class Members statutory damages of at least $500 per TCPA violation;

**c.** Enjoin the German Roofing from violating the TCPA.

**Count IV – Against German Roofing**
**For Willful Violations of § 227(b)(1)(A)(iii) Relative to ATDS Calls and Text Messages**

212.     Plaintiff incorporates the above paragraphs as if fully set forth above.

213.    As set forth above, and in Count III specifically, German Roofing called and text messaged Plaintiff's cellular telephone number with an ATDS and without his express consent.

214.    As alleged above, in certain calls that Plaintiff answered, the person that Plaintiff eventually spoke with indicated that he/she was affiliated with or calling on behalf of German Roofing.

215.    On more than one occasion, Plaintiff told the person he spoke with to stop calling him.

216.    Despite Plaintiff asking that the calls stop, calls continued to be made by German Roofing, for its own benefit and on behalf of Porch, as indicated by the person speaking with Plaintiff.

217.    As a result of these violations, Plaintiff is entitled to $1,500 per violation as provided by 42 U.S.C. § 227(b)(3)(C).

218.    As detailed below in Section IX, the above TCPA violations are typical and common of the type of actions that German Roofing engaged in on a large scale by and through its practice of calling persons with and ATDS and without the consent of the persons called for the purpose of promoting Porch's Telemarking Service Calls.

219.    The below defined Class Members are also entitled to statutory damages as a result of the fact that they were harmed in the same ways as Plaintiff alleges above.

220.    The proposed class action claims in Count IV against German Roofing are defined as follows:

> All persons in the State of Arizona who were called or texted by German Roofing with an ATDS four years prior to [the date of filing of this civil action] where German Roofing's calls and text messages were for the purpose of promoting Porch.com's home improvement services and recipients of the calls answered and told German Roofing to stop calling and German Roofing continued to call and text the numbers in question.

All persons in the State of California who were called or texted by German Roofing with an ATDS four years prior to [the date of filing of this civil action] where German Roofing's calls and text messages were for the purpose of promoting Porch.com's home improvement services and recipients of the calls answered and told German Roofing to stop calling and German Roofing continued to call and text the numbers in question.

All persons in the United State who were called or texted by German Roofing with an ATDS four years prior to [the date of filing of this civil action] where German Roofing's calls and text messages were for the purpose of promoting Porch.com's home improvement services and recipients of the calls answered and told German Roofing to stop calling and German Roofing continued to call and text the numbers in question.

WHEREFORE, Plaintiff is entitled to the following relief:

**a.** Declare that the telephone calls and text messages placed by German Roofing to Plaintiff's cellular telephone number violated the TCPA;

**b.** Award Plaintiff and Class Members statutory damages of $1,500 for each violation after they told German Roofing to stop calling them; and

**c.** Enjoin German Roofing from violating the TCPA.

**Count V – Vicarious Liability vs. Porch for German Roofing's Violations of 227(b)(1)(A)(iii)**

221.    Plaintiff incorporates the above paragraphs as if fully set forth above.

222.    Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful to use an "automatic telephone dialing system" or an "artificial or prerecorded voice" to call a person's cellular telephone number "with[out] the prior express consent of the called party."

223.    Plaintiff never provided "prior express written consent" to Porch or German Roofing to allow German Roofing to text or call his cellular number with an "automatic telephone dialing system or an artificial or prerecorded voice."

224.    Plaintiff never signed any documents that contained any of the requirements set forth by 47 CFR § 64.1200(f)(8).

225.    The calls to Plaintiff's cellular telephone number were telemarketing messages as defined by 47 CFR § 64.1200(f)(12) because German Roofing called and texted Plaintiff for the purpose of promoting Porch's Home Improvement Projects.

226.    Without Plaintiff's prior express invitation or permission, German Roofing called and texted Plaintiff's cellular number with a "automatic telephone dialing system" or "autodialer" for the purpose delivering a "telephone solicitation" and an "unsolicited advertisement" as these terms defined by 47 CFR § 64.1200(f)(2), (14) and (15).

227.    Plaintiff never gave Porch or German Roofing permission to call him with an ATDS for the purpose of promoting Porch's Telemarking Service Calls.

228.    The calls that Porch encouraged German Roofing to place to Plaintiff's cellular number resulted in dead air and long, unanswered pauses before a human would respond to Plaintiff's repeated "hello?" requests.  These allegations demonstrate that these calls were placed with an ATDS.

229.    German Roofing plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number, because Plaintiff did not provide his cellular telephone number to German Roofing or Porch prior to German Roofing calling and texting Plaintiff's cellular number.

230.    It is also plausible that German Roofing used some form of an ATDS based upon the frequency and persistence of the above described calls.

231.    Alternatively, consistent with the law of the 9th Circuit Court of Appeals, German Roofing called his cellular telephone number with telephone equipment that can automatically dial phone numbers from a stored list (in a random or sequential manner), rather than dialing his number after randomly or sequentially generating a strings of ten (10) digit numbers and then automatically dialing the randomly or sequentially generated strings of ten (10) digit numbers.

39

232.    As described above, German Roofing plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number, because Plaintiff did not provide Porch or German Roofing with his cellular telephone number prior to any calls or texting by German Roofing for the benefit of Porch.

233.    As described above, German Roofing plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers), because Plaintiff did not provide Porch with his cellular telephone number  prior to any calls or texting by German Roofing for the benefit of Porch.

234.    If Porch contends that it did not place the calls and text messages in questions, Porch is vicariously liable for any violations of the TCPA caused by German Roofing for one or more of the reason set forth in this civil action.

235.    As a result of these violations, Plaintiff is entitled to $500 per violation and up to $1,500 per violation as provided by 42 U.S.C. § 227(b)(3)(B)-(C) to the extent German Roofing continued to call or text Plaintiff with an ATDS after he told them to stop contacting him.

WHEREFORE, Plaintiff is entitled to the following relief:

    **a.**  Declare that the telephone calls and text messages placed to Plaintiff's cellular telephone number by German Roofing violated the TCPA;

    **b.**  Declare that Porch is vicariously liable for TCPA violations caused by German Roofing;

    **c.**  Award Plaintiff and Class Members statutory damages of at least $500 for each TCPA violation;

    **d.**  Award Plaintiff and Class Members statutory damages of $1,500 for each violation after they told German Roofing to stop calling them; and

    **e.**  Enjoin Porch and German Roofing from violating the TCPA.

**Count VI – Against the John Doe Defendants**
**Violations of Section 227(b)(1)(A)(iii) Based Upon ATDS Based Calls**

236.    Plaintiff incorporates the above paragraphs as if fully set forth above.

237.    Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful to use an "automatic telephone dialing system" or an "artificial or prerecorded voice" to call a person's cellular telephone number "with[out] the prior express consent of the called party."

238.    Plaintiff never provided "prior express written consent" to allow or otherwise authorize any of the JOHN DOE Defendants to call his cellular number with an "automatic telephone dialing system or an artificial or prerecorded voice."

239.    Plaintiff never signed any documents that contained any of the requirements set forth by 47 CFR § 64.1200(f)(8).

240.    The JOHN DOE Defendants' calls to Plaintiff's cellular telephone number were telemarketing messages as defined by 47 CFR § 64.1200(f)(12) because the calls promoted Porch's Home Improvement Projects.

241.    Without Plaintiff's prior express invitation or permission, one or more of the JOHN DOE Defendants called and texted Plaintiff's cellular number with a "automatic telephone dialing system" or "autodialer" for the purpose delivering a "telephone solicitation" and an "unsolicited advertisement" as these terms defined by 47 CFR § 64.1200(f)(2), (14) and (15).

242.    Plaintiff never gave any of the JOHN DOE Defendants permission to call him with an ATDS for the purpose of promoting Porch's Telemarking Service Calls.

243.    One or more of the JOHN DOE Defendants called Plaintiff's cellular number with an ATDS because the calls resulted in dead air and long, unanswered pauses before a human would respond to Plaintiff's repeated "hello?" requests.

244.    The JOHN DOE Defendants plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number, because Plaintiff did not provide Porch or any JOHN DOE Defendant with his cellular telephone number prior to any calls being placed by the JOHN DOE Defendants.

245.    Alternatively, the JOHN DOE Defendants plausibly utilized an ATDS to sequentially dial Plaintiff's cellular telephone number (from a set of stored numbers), because Plaintiff did not provide Porch or the JOHN DOE Defendants with his cellular telephone number prior to any calls being placed by the JOHN DOE Defendants.

246.    It is also plausible that an ATDS was used based upon the frequency and persistence of the above described calls.

247.    As a result of these violations, Plaintiff is entitled to at least $500 per violation and up to $1,500 per violation as provided by 42 U.S.C. § 227(b)(3)(B)-(C).

248.    As detailed below in Section IX, the above TCPA violations are typical and common of the type of actions that the JOHN DOE Defendants engaged in on a large scale by and through their practice of calling persons with and ATDS and without the consent of the persons called for the purpose of promoting Porch's Telemarking Service Calls.

249.    The below defined Class Members are also entitled to statutory damages as a result of the fact that they were harmed in the same ways as Plaintiff alleges above.

250.    The proposed class action claims in Count VI against the currently unknown JOHN DOE Defendants are defined as follows:

> All persons in the State of Arizona who were called or texted by the Defendant(s) [names inserted upon identification] with an ATDS four years prior to [the date of filing of this civil action] where the calls and text messages were for the purpose of promoting Porch.com's home improvement services and Porch.com and Defendant(s) does not have records to demonstrate that the persons consented to being called by Defendant(s) in this manner.
>
> All persons in the State of California who were called or texted by the Defendant(s) [names inserted upon identification] with an ATDS four years prior to [the date of filing of this civil action] where the calls and text messages were for the purpose of promoting Porch.com's home improvement services and Porch.com and Defendant(s) does not have records to demonstrate that the persons consented to being called by Defendant(s) in this manner.

All persons in the United States who were called or texted by the Defendant(s) [names inserted upon identification] with an ATDS four years prior to [the date of filing of this civil action] where the calls and text messages were for the purpose of promoting Porch.com's home improvement services and Porch.com and Defendant(s) does not have records to demonstrate that the persons consented to being called by Defendant(s) in this manner.

WHEREFORE, Plaintiff is entitled to the following relief:

    **a.**  Declare that the telephone calls and text messages placed by the JOHN DOE to Plaintiff's cellular telephone number violated the TCPA;

    **b.**  Award Plaintiff statutory damages of at least $500;

    **c.**  Award Class Members statutory damages of at least $500;

    **d.**  Enjoin the JOHN DOE Defendants from violating the TCPA.

**Count VII – Against the John Doe Defendants**
**For Willful Violations of § 227(b)(1)(A)(iii) For Placing ATDS Based Calls**

251.    Plaintiff incorporates the above paragraphs as if fully set forth above.

252.    As set forth above, and in Count VI specifically, the JOHN DOE Defendants called Plaintiff's cellular telephone number with an ATDS and without his express consent.

253.    And despite Plaintiff telling representatives of the JOHN DOE Defendants to stop calling him, the JOHN DOE Defendants continued to call him with and ATDS.

254.    As a result of these violations, Plaintiff is entitled to $1,500 per violation as provided by 42 U.S.C. § 227(b)(3)(C).

255.    As detailed below in Section IX, the above TCPA violations are typical and common of the type of actions that the JOHN DOE Defendants engaged in on a large scale by and through their practice of calling persons with and ATDS and without the consent of the persons called for the purpose of promoting Porch's Telemarking Service Calls.

256.    The below defined Class Members are also entitled to statutory damages as a result of the fact that they were harmed in the same ways as Plaintiff alleges above.

257.    The proposed class action claims in Count VII against the currently unknown JOHN DOE Defendants are defined as follows:

> All persons in the State of Arizona who were called by Defendant(s) [names inserted upon identification] with an ATDS four years prior to [the date of filing of this civil action] where the calls were for the purpose of promoting Porch.com's home improvement services and recipients of calls answered and told Defendant(s) to stop calling and Defendant(s) continued to call and text the numbers in question.

> All persons in the State of California who were called by Defendant(s) [names inserted upon identification] with an ATDS four years prior to [the date of filing of this civil action] where the calls were for the purpose of promoting Porch.com's home improvement services and recipients of calls answered and told Defendant(s) to stop calling and Defendant(s) continued to call and text the numbers in question.

> All persons in the United States who were called by Defendant(s) [names inserted upon identification] with an ATDS four years prior to [the date of filing of this civil action] where the calls were for the purpose of promoting Porch.com's home improvement services and recipients of calls answered and told Defendant(s) to stop calling and Defendant(s) continued to call and text the numbers in question.

WHEREFORE, Plaintiff is entitled to the following relief:

   a.   Declare that the telephone calls and text messages placed by the JOHN DOE Defendants to Plaintiff's cellular telephone number violated the TCPA;

   b.   Award Plaintiff statutory damages of $1,500 for each violation after Plaintiff told one or more of the JOHN DOE Defendants to stop calling him;

   c.   Award Class Members statutory damages of $1,500 for each violation after they told one or more of the JOHN DOE Defendants to stop calling them; and

   d.   Enjoin the JOHN DOE Defendants from violating the TCPA.

**Count VIII – Vicarious Liability vs. Porch**
**For the John Doe Defendant's Violations of § 227(b)(1)(A)(iii)**

258.    Plaintiff incorporates the above paragraphs as if fully set forth above.

259.    Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful to use an "automatic telephone dialing system" or an "artificial or prerecorded voice" to call a person's cellular telephone number "with[out] the prior express consent of the called party."

44

260.     Plaintiff never provided "prior express written consent" to Porch or any JOHN DOE Defendants affiliated with Porch to allow the JOHN DOE Defendants call his cellular number with an "automatic telephone dialing system or an artificial or prerecorded voice."

261.     Plaintiff never signed any documents that contained any of the requirements set forth by 47 CFR § 64.1200(f)(8).

262.     The calls to Plaintiff's cellular telephone number were telemarketing messages as defined by 47 CFR § 64.1200(f)(12) because one or more of the JOHN DOE Defendants called and texted Plaintiff for the purpose of promoting Porch's Home Improvement Projects.

263.      Without Plaintiff's prior express invitation or permission, one or more of the JOHN DOE Defendants called and texted Plaintiff's cellular number with a "automatic telephone dialing system" or "autodialer" for the purpose delivering a "telephone solicitation" and an "unsolicited advertisement" as these terms defined by 47 CFR § 64.1200(f)(2), (14) and (15).

264.     Plaintiff never gave Porch or any of the JOHN DOE Defendants permission to call him with an ATDS for the purpose of promoting Porch's Telemarking Service Calls.

265.     The calls that Porch encouraged one or more of the JOHN DOE Defendants to place to Plaintiff's cellular number resulted in dead air and long, unanswered pauses before a human would respond to Plaintiff's repeated "hello?" requests.  These allegations demonstrate that these calls were placed with an ATDS.

266.     One or more of the JOHN DOE Defendants plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number, because Plaintiff did not provide his cellular telephone number to Porch or any of the one or more of the JOHN DOE Defendants prior to any calls occurring.

267.     It is also plausible that an ATDS was used based upon the frequency and persistence of the above described calls.

268.    One or more of the JOHN DOE Defendants plausibly utilized an ATDS to randomly dial Plaintiff's cellular telephone number, because Plaintiff did not provide Porch or any of the JOHN DOE Defendants with his cellular telephone number prior to any calls being placed by JOHN DOE Defendants for the benefit of Porch.

269.    One or more of the JOHN DOE Defendants plausibly utilized an ATDS to dial Plaintiff's cellular telephone number (from a set of stored numbers), because Plaintiff did not provide Porch or any of the JOHN DOE Defendants with his cellular telephone number prior to any calls being placed by JOHN DOE Defendants for the benefit of Porch.

270.    If Porch contends that it did not place the calls and text messages in questions, Porch is still vicariously liable for any violations of the TCPA caused by one or more of the JOHN DOE Defendants for one or more of the reason set forth in this civil action.

271.    As a result of these violations, Plaintiff is entitled to $500 per violation and up to $1,500 per violation as provided by 42 U.S.C. § 227(b)(3)(B)-(C) to the extent any of the JOHN DOE Defendants continued to call or text Plaintiff with an ATDS after he told them to stop contacting him.

WHEREFORE, Plaintiff is entitled to the following relief:

  **a.**  Declare that the telephone calls and text messages placed to Plaintiff's cellular telephone number by the JOHN DOE Defendants violated the TCPA;

  **b.**  Declare that Porch is vicariously liable for TCPA violations caused by the JOHN DOE Defendants;

  **c.**  Award Plaintiff and Class Members statutory damages of at least $500 for each violation;

  **d.**  Award Plaintiff and Class Members statutory damages of $1,500 for each violation after they told one or more of the JOHN DOE Defendants to stop calling them; and

  **e.**  Enjoin Porch and the JOHN DOE Defendants from violating the TCPA.

**XI.    Class Certification Elements**

272.    Plaintiff can satisfy the elements of Federal Rule of Civil Procedure 23.

273.    Plaintiff reserves the right to modify the above class definitions in response to any argument advanced by Porch that may contend that one or more of the above classes constitute so-called "failsafe" classes.

274.    Plaintiff reserves the right to modify the above class definitions in response to discovery that may demonstrate that one or more of the JOHN DOE Defendants placed the telephone calls or text messages at issue.

275.    The putative class members can be administratively ascertained from business records maintained by the Defendants.  *See, e.g., In re Community Bank of Northern Virginia Mortg. Lending Practices Litigation*, 795 F.3d 380, 397 (3d Cir. 2015) (finding that the Plaintiff's proposed class was ascertainable because the defendant "possesse[d] all of the relevant bank records needed to identify the putative class members").

276.    The putative class members can be placed into the appropriate class based upon the area code associated with their cellular telephone numbers and their mailing addresses.

### i.  Numerosity

277.    Numerosity is satisfied because Defendants (individually and collectively) called and texted at least forty (40) residents of Texas in the same manner that Defendants called and texted Plaintiff through-automated dialing technology prohibited by the TCPA: by  (a) automated dialing technology prohibited by the TCPA – either through an ATDS; and (b) without consent of the person called.

278.    Alternatively, the above telemarketing that Defendants placed to at least forty (40) residents of Texas were made with a "predictive dialer" as this term has been defined by the FCC.

279.    Joinder of all members of the Class is impracticable.

### ii.     Commonality and Predominance

47

280.    The elements of commonality and predominance are satisfied.

281.    As to the TCPA based classes, commonality exists because Defendants acted in a common manner toward Plaintiff and the proposed class members by calling and texting Plaintiff and the proposed class members in the same way:  (a) through-automated dialing technology prohibited by the TCPA – either through an ATDS; and (b) without consent of the person called.

282.    Alternatively, for appellate purposes, commonality exists because Defendants acted in a common manner toward Plaintiff and the proposed class members by calling Plaintiff and the proposed class members with a "predictive dialer" as this term has been defined by the FCC.

283.    There are questions of law and fact common to the claims of Plaintiff and members of the proposed classes, including;

a.    whether the dialing systems used by the Defendants qualify as an ATDS or a predictive dialer under the TCPA;
b.    whether the Defendants violated the TCPA;
d.    whether the Defendants can demonstrate consent; and
e.    whether the conduct described herein was intentional so as to warrant treble or punitive damages of up to $1,500 per call.

iii.    **Typicality**

284.    Plaintiff's claims are typical of the claims of the proposed Class, as the calls and text messages that Defendants placed were the same or substantially similar to those received by the proposed class members.

285.    Plaintiff and the proposed class members' claims all arise from the same operative facts and are based on the same legal causes of action.

286.    Plaintiff and each of the proposed class members are all subject to the same illegal calling techniques employed by Defendants.

iv.    **Appropriateness and Superiority**

48

287.    A class action is an appropriate method for the fair and efficient adjudication of this controversy, and superior to other available methods for the fair and efficient adjudication of this controversy.

288.    The common questions of law and fact enumerated above predominate over questions affecting only individual Class members.

289.    The likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, as well as the absence of a fee shifting mechanism.

290.    As such, the expense and burden of individual litigation would make it impracticable for proposed Class members to prosecute their claims individually.

### v.    Plaintiff and Class Counsel Are Adequate

291.    Plaintiff and proposed class counsel will fairly, adequately and vigorously represent and protect the interests of the proposed class members and has/have no interest antagonistic to those of the putative classes.

292.    There are no defenses unique to Plaintiff.

293.    Plaintiff's lead attorney (James C. Vlahakis) is an experienced consumer class action litigator who has defended over a hundred consumer-based claims since 1998 and has litigated over forty TCPA based putative class actions.  For example:

> a.  In conjunction with class counsel, Mr. Vlahakis has obtained Court approval of numerous TCPA class actions.  *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates v. CSL Biotherapries, Inc.* (N.D. Ill.) ($3.5 million fax based settlement);

49

b. Additionally, Mr. Vlahakis (as a former consumer class action defense attorney) has gained court approval of dozens of **FDCPA** class actions;

c. Mr. Vlahakis understands the types of defenses that are typically raised in TCPA class actions because he defeated a putative plaintiff's attempt to certify a TCPA class action in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013);

d. Mr. Vlahakis has also caused a previously certified TCPA class action to be decertified in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012);

e. In litigating TCPA class actions, Mr. Vlahakis has ascertained the identities of putative class members individually and in conjunction with industry experts;

f. Mr. Vlahakis has also filed and argued petitions for declaratory relief before the FCC;

g. Mr. Vlahakis has never had a state attorney general or U.S. Attorney General for any district object to a case where Mr. Vlahakis and class counsel have jointly petitioned a district court for certification; and

h. Lastly, Mr. Vlahakis has utilized third-party class notice providers to issue notice and payments to class members.

294. Defendants are not aware of any circumstances that would render Mr. Vlahakis to be unqualified to be class counsel in this case.

### vi. Injunctive and Declaratory Relief Are Warranted

295. FRCP 23(b)(2) provides that injunctive and declaratory relief are proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class."

296. The above violations apply generally to the proposed classes.

297. For the above reasons, this Court should declare Defendants' misconduct unlawful and enjoin Defendants from further violating the TCPA.

50

1

2      ***Plaintiff hereby demands a trial of this civil action by jury.***

3
       Respectfully submitted,
4

5      Plaintiff NICK FISHER, individually
       and on behalf of all others similarly situated,
6

7      By: /s/James Vlahakis
       James Vlahakis, Esq. (*pro hac vice*)
8      SULAIMAN LAW GROUP, LTD.
       2500 South Highland Avenue, Suite 200
9      Lombard, Illinois 60148
       Telephone: (630) 581-5456
10     jvlahakis@sulaimanlaw.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        51